Gray, Appellant, *v.* Leibert et al.

Argued April 17, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*R. C. Mauch*, with him *Milton J. Goodman* and *Mauch & Goodman*, for appellant.

*Herbert J. Hartzog*, with him *Samuel H. Goodman*, for appellees.

OPINION BY MR. JUSTICE DREW, May 26, 1947:

This appeal is by plaintiff, James Gray, from a final decree of the court of common pleas dismissing his bill in equity filed against defendants, Arthur L. Leibert, Harry F. Leibert and Ethel A. Leibert, for a reconveyance of certain real estate, known as the Creek Road

property, situated in the City of Bethlehem, Northampton County; and for an accounting of certain moneys.

It is the primary contention of plaintiff that the facts and circumstances surrounding the conveyance of the real estate, at his direction, to defendant, Arthur L. Leibert, by H. P. McFadden, Esq., plaintiff's trustee, created a trust in defendant. Plaintiff seems uncertain concerning the type of trust he relies upon—whether an express, resulting or constructive trust.

The following facts were found by the learned chancellor: In 1928, plaintiff, an adult, owned, among other real estate, the Creek Road property, which was then encumbered by a mortgage held by Gosztonyi Savings and Trust Company. At that time plaintiff's wife was a mental patient in the Allentown State Hospital. Thinking it would improve his position to borrow more money on the property, plaintiff induced John Deemer, a friend and neighbor, to purchase the mortgage from the bank with Deemer's own funds, and to issue execution thereon. Plaintiff paid the costs of the foreclosure and his attorney, Daniel L. McCarthy, Esq., conducted the proceedings. Following the sale, the property was conveyed, by sheriff's deed dated December 19, 1928, to H. P. McFadden, Esq., an attorney in McCarthy's office, without the payment of any consideration therefor, and that deed was duly recorded. To secure the $6,200 which Deemer had thus paid to the bank, McFadden executed a mortgage, dated February 1, 1929, in that amount in favor of Deemer and wife. Deemer later made additional loans to plaintiff, and as of November, 1935, plaintiff was indebted to Deemer in the total sum of $8,700 with interest. From December 19, 1928, to November 29, 1935, McFadden, as had orally been agreed, held legal title to the property, as trustee for plaintiff, under and subject to the $6,200 mortgage, as well as the obligation for the additional loans made by Deemer to plaintiff. During that period, neither plaintiff, nor McFadden in his behalf, made any payments whatever to Deemer in

reduction of the principal and interest of this indebtedness. In the spring and summer of 1933, Deemer expressed his dissatisfaction to plaintiff and to his trustee, McFadden, that the property had been permitted to fall into disrepair and that the taxes were not being paid. Deemer then threatened that he would "take whatever steps [that were] necessary to protect himself", and he also stated to plaintiff: "Now, if you don't give me $2500, or sell this home and give me some money on that debt, I am going to sell it."

Meanwhile, Deemer interested defendants (a physician, his wife and son who lived nearby) in plaintiff's property; and in 1933, at a meeting attended by plaintiff and defendants, it was agreed that defendants were to take over the property, and plaintiff was to receive his board and lodging from them in consideration for his taking care of the premises. In order that some needed repairs might be made, defendants did not move into the property until June, 1934. The cost of such repairs was paid by defendant, Dr. Harry F. Leibert. Plaintiff, McFadden, Dr. Leibert, Mrs. Ethel A. Leibert and Deemer met in the house on the property in November, 1935, and the latter said that "He wanted some of his money, and he wanted the interest paid and also the taxes paid, that he was getting in too deep, and there was no thought of any payment whatsoever, and he couldn't carry it on any longer." Deemer then inquired of defendant, Dr. Leibert, whether he was willing to pay $2,500 for the property, and the latter replied that he was. Plaintiff, McFadden and Deemer then went into another room and when they returned, McFadden announced that a deed for a consideration of $2,500 was to be made to Arthur L. Leibert, son of the other two defendants. All of the parties then present knew that the consideration of $2,500 agreed upon was to be paid by a bond and mortgage in that amount from Arthur L. Leibert to Deemer and wife. Accordingly, on November 29, 1935, McFadden, pursuant to instructions received from plain-

tiff, prepared a general warranty deed (absolute by its terms, with no reservation or imposition of a trust, and unaccompanied by a separate declaration of trust) conveying the property from himself to defendant, Arthur L. Leibert; and at the same time prepared a $2,500 bond and mortgage from Arthur L. Leibert to Deemer and wife. Following the execution of these instruments, the deed and mortgage were placed of record, the deed having affixed thereto and cancelled Federal documentary tax stamps in the amount of $2.50 and Pennsylvania documentary tax stamps in the amount of $1.25.

On the same day, McFadden executed an affidavit wherein it was stated that he was "connected with the transaction, entered into between H. P. McFadden . . . and Arthur L. Leibert . . ., with regard to which this affidavit is given in the capacity of party, and that the true, full and complete value of such transaction is $2500.00 . . ." On February 6, 1936, the mortgage from McFadden to Deemer and wife, which had secured plaintiff's indebtedness to Deemer existing at the time of the 1928 sheriff's sale, was satisfied of record; and Deemer also surrendered to McFadden the notes that Deemer held for the additional loans he had made to plaintiff between 1928 and 1935. On April 14, 1937, the $2,500 mortgage of Arthur L. Leibert to Deemer and wife, with interest thereon, was paid by defendant, Dr. Leibert, and satisfied of record.

From his own funds, Dr. Leibert expended on the property approximately $9,408.63 for repairs and improvements from 1933 to 1945, $1,346.58 for taxes from 1931 to 1945, and $279.94 for fire insurance premiums from 1934 to 1945, a total sum of $11,035.15, and plaintiff neither made nor tendered restitution to defendants for these expenditures or for the amount paid by them in satisfaction of the $2,500 mortgage.

Plaintiff lived alone on the property from about 1923 to 1934, and from this latter date until 1939 or 1940 he resided there with defendants. In 1937, he turned

over to defendant, Mrs. Ethel A. Leibert, the sum of $1,972.58 for disbursement in his behalf. She expended all of this money, as well as $310.16 of her own funds, pursuant to plaintiff's express instructions. Therefore, instead of being indebted to plaintiff, as he contends, the chancellor found that there was a credit of $310.16 due to her.

Regardless of the type of trust plaintiff seeks to impress upon the property, the relief sought by him must be refused. "An express trust is created only if the settlor manifests an intention to create it, although the manifestation may be made by conduct as well as by words. A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property. In other words, an express trust is created if it appears that there was an affirmative intention to create it; whereas in the case of a resulting trust the circumstances indicate the absence of an intention to give the beneficial interest to the person in whom the legal title to the property is vested": Scott on Trusts, Vol. 3, §404.1, p. 2163. "On the other hand, a constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. . . . A constructive trust is not based upon the intention of the parties but is imposed in order to prevent one of them from being unjustly enriched at the expense of the other": Scott on Trusts, Vol. 3, §462.1, p. 2315.

We gather from the whole that plaintiff relies upon the theory of an express trust. At the trial it was his contention that it was expressly agreed by the parties at the time of the conveyance from McFadden to defendant, Arthur L. Leibert, that the latter was to hold the property in trust for plaintiff. Such a parol con-

tract or agreement is void under section 4 of the Act of April 22, 1856, P. L. 532, which provides as follows: ". . . all declarations or creations of trust or confidences of any lands, tenements or hereditaments, and all grants and assignments thereof shall be manifested by writing, signed by the party holding the title thereof, or by his last will in writing, or else to be void: Provided, That where any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise or result by implication or construction of law, or be transferred or extinguished by act or operation of law, then and in every such case such trust or confidence shall be of the like force and effect as if this act had not been passed."

Plaintiff's position is not improved by reliance on a resulting trust. "A resulting trust is raised only from fraud in obtaining the title, or from payment of the purchase-money when the title is acquired": *Watkins and Miller v. Watkins,* 101 Pa. Superior Ct. 426, 428; *Moyer v. Moyer,* 356 Pa. 184, 187, 51 A. 2d 708. In the instant case, plaintiff admittedly did not pay the purchase-money when the transfer was made to defendant, Arthur L. Leibert. There is not a suspicion of fraud on defendants' part in obtaining title from McFadden, nor does it appear that they obtained this real estate at a sum below its value.

Even if it could be said that plaintiff's claim is based upon the theory of a constructive trust, he still could not recover under the facts here present. We find nothing in the entire record to indicate that the acquisition and retention of the property by defendant, Arthur L. Leibert, would result in his unjust enrichment. We said, in *Lalich v. Bankovsky,* 350 Pa. 441, 444, 39 A. 2d 514: "Section 4 of the Act of April 22, 1856, P. L. 532, 33 PS section 2, declares that oral trusts of real property shall be void except where '. . . a trust or confidence shall or may arise or result by implication or construction of law . . .' In Moffitt v. Moffitt, 340 Pa. 107, 110, 16 A. 2d

418, Chief. Justice SCHAFFER stated the rule to be that 'Evidence to support a parol trust must be direct, positive, express, unambiguous and convincing.' See also Jourdan v. Andrews, 258 Pa. 347, 353, 102 A. 33; Kirk v. Ford, 330 Pa. 579, 581, 200 A. 26."

The evidence adduced by plaintiff was vague, weak and, as to the essentials of his case, consisted of his own uncorroborated testimony. He failed to meet the burden cast upon him under the circumstances. His testimony was flatly contradicted by defendants and Deemer, who stated that the conveyance from McFadden to defendant, Arthur L. Leibert, was intended by the parties as an outright sale of the property for the consideration of $2,500. Equally persuasive is the deed, which is absolute on its face; the documentary stamps on that deed, which were not required if the conveyance were but a transfer of the property to substitute one trustee for another, as argued by plaintiff, and the affidavit of McFadden of the true consideration for the transaction. All the facts and circumstances attending the transfer in November, 1935, lead to the inevitable conclusion reached by the learned chancellor. His findings, approved by the court en banc, are a complete negation that the parties intended to create a trust in plaintiff's favor, or that defendant, Mrs. Leibert, had not fully and properly accounted for all moneys received from plaintiff. Since these findings are amply supported by the evidence, they are binding on this Court: *Norris Tl. & Mach. Co. v. Rosenlund,* 355 Pa. 560, 50 A. 2d 273; *Fitzpatrick v. Fitzpatrick,* 346 Pa. 202, 29 A. 2d 790.

If, by any stretch of the imagination, it could be conceived that a constructive trust did arise under the instant facts, still plaintiff's claim could not be sustained, for the reason that he has failed to make or to tender restitution to defendants for the large outlay of moneys for repairs, taxes, insurance premiums and in payment of the $2,500 mortgage. He who seeks equity must do equity. "A person is entitled to specific resti-

tution of property only on condition that he compensate the other for expenditures with reference to the subject matter which have inured to his benefit, to the extent that justice between the parties requires": Restatement of the Law of Restitution, §158.

The chancellor properly dismissed plaintiff's bill of complaint.

Decree affirmed, at plaintiff's cost.