347 A.2d 477

**Leslie A. BUTLER**

v.

**William L. BUTLER, Appellant.**

Supreme Court of Pennsylvania.

Argued June 30, 1975.

Decided Oct. 30, 1975.

---

524

Carl A. Wiker, Wiker & Duvall, John A. Duvall, Jeffrey E. Leber, Couderport, for appellant.

John E. Rydesky, Rydesky & Malizia, Emporium, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

In this appeal, we must decide whether the lower court's decree imposing a constructive trust upon the

parties' entireties property in favor of the wife-appellee should be sustained.

Appellee, Leslie A. Butler, and appellant, William L. Butler, married on March 27, 1968. In May of the following year, the parties took title to a parcel of land as tenants by the entireties for the recited consideration of $1,600.00. Subsequently, they erected a modular home on the land, bringing their total investment to $22,000.-00, exclusive of the labor contributed by the parties. They lived in the property until their separation in March of 1971.

On April 29, 1971, appellee instituted a divorce action against appellant and in her complaint specifically requested the court to determine the property rights and interests of the parties in the jointly-held realty.[1] Following a hearing on the complaint, the lower court reserved decision on appellee's right to a divorce until the issues of support and property rights could be resolved.

Following a hearing on March 11, 1974, a Master's Report was filed with the court wherein certain recommended findings of fact and conclusions of law were made. In relevant part, the Master found that the land and dwelling held jointly by the parties represented an investment of about $22,000.00; that $6,000.00 of this sum came from joint savings of the parties with the remaining $16,000.00 coming from a joint bank account. Significantly, the Master found that this $16,000.00 was the appellee's own money which the appellant had caused her to place in their joint account through his influence and control and because she trusted and relied upon his advice. The Master then concluded, as a matter of law, that, as a result of the actions of the appellant in taking "undue advantage" of his wife by having her transfer her assets into their names without consideration, a

1. This action was taken pursuant to the provisions of the Act of May 2, 1929, P.L. 1237, § 15, *as amended,* 23 P.S. § 15(1)(a) (Supp. 1975).

"constructive trust" in the amount of $16,000.00 was created in favor of appellee in the jointly-held realty.

On March 20, 1974, the lower court entered an order accepting, adopting, and approving the Master's Report and further ordered that judgment be entered in favor of appellee in the sum of $16,000.00 against the jointly-held realty. The court also directed the Master to conduct further proceedings to effectuate a partition of the realty.[2] We granted allocatur and vacated the order of the Superior Court quashing the appeal to that Court. We now, after considering the merits, vacate the lower court's order for the reasons which follow.[3]

█ █ Crucial to this case is appellee's assertion that the Act of May 10, 1927 P.L. 844, § 1, *as amended*, 68 P. S. § 501, which converts a tenancy by the entireties into a tenancy in common of equal one-half shares after a divorce and permits either party of partition the property, is inapplicable. This argument is based upon appellee's contention that the creation of the entireties property arose from appellant's exertion of undue influence on her and the family finances. We agree that, where a spouse in a confidential relationship abuses that confidence and by fraud or undue influence causes a "gift to entireties" to arise, we will look behind that transaction and, when necessary, impose the equitable remedy of a constructive trust in order to avoid unjust enrichment. *See generally* Restatement (Second) of Trusts, § 2 Comment (b), § 44 Comment (c); *Chambers v. Chambers*, 406 Pa. 50, 54, 176 A.2d 673, 675 (1962); *Gray v. Leibert*, 357 Pa. 130, 135, 53 A.2d 132, 135 (1947). However, where the evidence only reveals that the consideration in creating

2. A final decree of divorce was entered on August 9, 1974, with the court retaining continuing jurisdiction over the property division and the constructive trust.

3. On December 3, 1974, this Court by per curiam order vacated the Superior Court order and remanded with instructions to hear and determine the appeal on its merits. Thereafter, on February 10, 1975, the Superior Court certified this case to our Court.

the entireties estate was unequal, such inquiry is unnecessary. As we have stated, "[i]t is immaterial whose funds were used to create the tenancy by the entireties . . . ." *Shapiro v. Shapiro*, 424 Pa. 120, 136, 224 A. 2d 164, 172 (1966).

The Master in making his recommendation to impose a constructive trust relied upon our statement in *De Bernard v. De Bernard*, 384 Pa. 194, 196–97, 120 A.2d 176, 177–78 (1956), in which we said:

> "[W]here a husband obtains his wife's property without adequate consideration, the law creates a rebuttable presumption that a trust is created in her favor, and if the husband claims a benefit arising from the transaction he must show affirmatively that he acted in good faith and that he took no undue advantage of his wife."

*See also Clay v. Keiser*, 460 Pa. 620, 334 A.2d 263, 267 (1975); *Shapiro v. Shapiro*, 424 Pa. 120, 129, 224 A.2d 164, 169 (1966); *Darlington's Appeal*, 86 Pa. 512, 518 (1878). This presumption is in sharp contrast with that applied to men in like circumstances for we have also held that where a husband purchases real or personal property with his own funds and places it in an entireties estate, there is a factual presumption that a gift is created which the husband can only rebut by "clear, explicit and unequivocal" evidence. *Shapiro v. Shapiro*, 424 Pa. 120, 129, 224 A.2d 164, 169 (1966); *Lapayowker v. Lincoln College Preparatory School*, 386 Pa. 167, 171–72, 125 A.2d 451, 454 (1956).

Such a one-sided presumption can no longer stand in view of the passage of the Pennsylvania Equal Rights Amendment, Pa.Const. Art. I, § 28 (adopted May 18, 1971), for "[t]he law will not impose different benefits or different burdens upon the members of a society based on the fact that they may be man or woman." *Henderson v. Henderson*, 458 Pa. 97, 327 A.2d 60, 62

(1974). *Accord, Hopkins v. Blanco,* 457 Pa. 90, 93, 320 A.2d 139, 140 (1974); *Conway v. Dana,* 456 Pa. 536, 539, 318 A.2d 324, 326 (1974). As we observed in *Di Florido v. Di Florido,* 459 Pa. 641, 331 A.2d 174, 179 (1975), the husband is no longer necessarily the "sole provider," and it is likely that both spouses have contributed to the goods and furnishings of the household. Assuming then that both parties in a marriage provide for each other, anytime either a husband or wife contributes towards the purchase of entireties property their contribution is presumed to be a gift to the other.

■ Since we have now discarded the one-sided presumption, we must determine whether a confidential relationship exists between the parties. The Master assumed that the marital relationship is confidential as a matter of law: as our cases indicate, it is a question of fact. *Stewart v. Hooks,* 372 Pa. 542, 94 A.2d 756 (1953); Note, Confidential Relationships in Pennsylvania Law, 97 U.Pa.L.Rev. 712, 716–18 (1949). Here the testimony reveals that the appellee was a secretarial school graduate who had worked as a legal secretary. The appellant, on the other hand, was engaged in construction work. Appellee handled the business affairs of the marriage including the writing of all their checks and even had a separate bank account for herself. While she did contribute her separate monies toward the joint property, it appears that the appellant had urged her to take a mortgage instead of selling her stock to finance their home. Furthermore, the Master noted that appellant worked during the marriage and contributed his income toward family finances. He also helped in the building of the home. As we stated in *Di Florido v. Di Florido,* 459 Pa. 641, 331 A.2d 174, 179 (1975), we should "acknowledge the *equally important* and often substantial nonmonetary contributions made by either spouse."

This situation is in marked contrast with that in the cases relied upon by the Master. In *Shapiro v. Shapiro*, 424 Pa. 120, 128, 224 A.2d 164, 169 (1966), this Court noted that "[t]hat instant record portrays not simply the normal display of confidence of a wife in her husband but of a wife who trusted to the *extreme* her husband in handling her business affairs . . . . [T]he wife relied *entirely* upon the husband's advice and judgment in *all* business affairs relating to the properties . . . ." (Emphasis added). In *De Bernard v. De Bernard*, 384 Pa. 194, 197, 120 A.2d 176, 178 (1956), this Court found actual fraud and misrepresentation on the husband's part which vitiated the creation of the entireties estate. Finally, in *Darlington's Appeal*, 86 Pa. 512, 522–23 (1878), the evidence indicated that the wife was mentally weak, unacquainted with the forms of business and her rights in the property, and dominated and unfairly influenced by her husband.

■ Thus, we conclude that in a marital relationship a gift to entireties property is presumed for contributions made by either husband or wife. A constructive trust will be imposed only when it appears that the parties are in fact in a confidential relationship with one party enjoying an advantage over the other because of superior knowledge or influence and that this domination caused a gift to entireties property to arise. *See generally Stewart v. Hooks*, 372 Pa. 542, 548, 94 A.2d 756, 759 (1953). Finally, it must appear that it would be manifestly unjust to allow one party to thereby profit at the expense of the other.

■ In the instant case, the appellee managed the family finances and there is no evidence that she did not understand the nature of the entireties estate when she contributed her money to it. While we accept the finding of the court below that appellee trusted her husband,

her reliance appears to be that found in a normal marital relationship and not of an extreme nature. Finally, since appellant contributed his salary to the marital unit and his labor in the building of the home, injustice will not result from denying the constructive trust.

Decree reversed. Each party to bear own costs.

POMEROY, J., filed a concurring opinion.

ROBERTS, J., filed a dissenting opinion.

MANDERINO, J., dissents.

POMEROY, Justice (concurring).

I have no doubt that the Court's decision is sound in light of the standards that we must now apply. My approach to the problem being somewhat different from the Court's however, I deem it appropriate to add this separate statement.

A constructive trust arises "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Restatement of Restitution § 160 (1937); *Truver v. Kennedy*, 425 Pa. 294, 229 A.2d 468, 474 (1967); *Chambers v. Chambers*, 406 Pa. 50, 54, 176 A.2d 673, 675 (1962). A transferee is under such an equitable duty to reconvey property to the transferor if the transfer was induced by fraud, duress, undue influence, or mistake, or if the transfer was the result of an abuse of a confidential relationship, *Chambers v. Chambers, supra,* at 54, 176 A.2d at 675. A confidential relationship "is not confined to particular association of parties but exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Silver v. Silver*, 421 Pa. 533, 537, 219 A.2d 659 (1966). "Once a confidential relationship is shown to have existed between the parties

to a transfer of property, the transferee bears the burden of proving that he took no unfair advantage of his relationship with the transferor." *Peoples First National Bank & Trust Company v. Ratajski,* 399 Pa. 419, 160 A.2d 451 (1960). A transferor of property who seeks to have a constructive trust imposed must, of course, prove the facts which would entitle him to relief by evidence which is clear, precise, and convincing. See *Truver v. Kennedy,* 425 Pa. 294, 307, 229 A.2d 468 (1967); see generally *Masgai v. Masgai,* 460 Pa. 453, 333 A.2d 861 (1975); *Sechler v. Sechler,* 403 Pa. 1, 7, 169 A.2d 78 (1961).

Under our case law a confidential relationship has been presumed with respect to transfers of property from a wife to her husband; in such cases, therefore, the husband as transferee has borne the burden of proving that he acted in good faith and took no undue advantage of his wife. *Shapiro v. Shapiro,* 424 Pa. 120, 129, 224 A.2d 164 (1966). There has been, however, no correlative presumption of a confidential relationship between spouses with respect to transfers of property from a husband to his wife; rather, it has been presumed that a gift by the husband was intended. *Lapayowker v. Lincoln College Preparatory School,* 386 Pa. 167, 125 A.2d 451 (1956). I agree with the Court that this difference in treatment of transfers of property as between spouses violates the Equality of Rights Amendment of the Constitution of Pennsylvania.*

I also agree that this constitutional infirmity in our law is best remedied by the complete abolition of any presumption of a confidential relationship in the marital setting. Application of such a presumption in favor of wives only is a vestige of days, long passed, when it was

---

* Article I, Section 28, of the Constitution of Pennsylvania, adopted May 18, 1971, provides:
  "Equality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual."

normal and expected that husbands should manage the family money and property without the advice or consent of their wives. No purpose would be served by providing for the equality of treatment of spouses by the extension of the presumption of a confidential relationship between spouses in order to afford protection to husbands, for neither husbands nor wives, as a class, today occupy the rather passive and submissive role to which women formerly were relegated.

The abolition of the presumption of a confidential relationship in a marital setting does not, of course, preclude a person from showing that a confidential relationship *in fact* existed in his or her marriage. As it is the province of the fact-finder to resolve disputes as to the existence of such a relationship, and as the chancellor below cast his findings in light of a now discarded presumption, I agree with my Brother ROBERTS that a remand for factual findings on this issue would ordinarily be in order. Because, however, my independent review of the record convinces me that a finding of a confidential relationship could not be supported by the record, I concur in the reversal of the chancellor's decree.

ROBERTS, Justice (dissenting).

I dissent. Although I agree that the master applied an incorrect presumption, I cannot join the majority's analysis or factual determinations. I would vacate the hearing court's decree and would remand for further proceedings.

Two "one-sided presumptions" are at issue here. The master in this case apparently applied the rebuttable presumption that a trust is created in a wife's favor if a husband obtains a wife's property without adequate consideration. There is another presumption, not applied by the master, that a gift arises when a husband purchases real or personal property with his own funds and places

it in an entireties estate. *Clay v. Keiser*, 460 Pa. 620, 334 A.2d 263 (1975). The Pennsylvania Equal Rights Amendment, Pa.Const. art. I, § 28, (adopted May 18, 1971) prohibits such presumptions unless they are applied equally to both the wife and the husband. See *Henderson v. Henderson*, 458 Pa. 97, 327 A.2d 60 (1974). Since such an application of these two presumptions would create a conflict, we must choose between them. I agree with the majority that the "gift" presumption should remain and should be applied to both the husband and wife and that the "trust" presumption should be abandoned.

Here, the wife is entitled to a constructive trust, thus rebutting the gift presumption, only if she can establish her claim by clear and convincing evidence. *Clay v. Keiser*, supra. We have previously held that such a trust arises when:

" '. . . a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.' *Gray v. Leibert*, 357 Pa. 130, 135, 53 A.2d 132, 135. Such a trust may arise where there is a breach of a confidential relationship by the transferee, or it may arise out of circumstances evidencing fraud, duress, undue influence or mistake. Restatement, Trusts, Sec. 44(a), 44(b)."

*Chambers v. Chambers*, 406 Pa. 50, 54, 176 A.2d 673, 675 (1962). See also *Buchanan v. Brentwood Federal Savings and Loan Assn.*, 457 Pa. 135, 150–52, 320 A.2d 117, 126–27 (1974); *Shapiro v. Shapiro*, 424 Pa. 120, 224 A. 2d 164 (1966).

The master found, based on substantial evidence, the following facts:

". . . .

"11. That plaintiff trusted defendant and relied upon his advice from the time of the marriage and for more than one year thereafter.

"12. That the defendant by his advice and course of conduct together with his inquiries concerning the estate of the father of the plaintiff and the adoption of the son of plaintiff by her prior marriage was intended to enable defendant to obtain property of the plaintiff and place her under the control and domination of defendant.

"13. That defendant did physically abuse plaintiff and she was under undue pressure and in the later months of the parties living together, the plaintiff was in fear of the defendant.

". . . ."

Credibility is solely an issue for the trier of fact. *Kay v. Kay*, 460 Pa. 680, 334 A.2d 585 (1975) ; our review is therefore limited to determining whether the factual findings are adequately supported by the evidence. *Kay v. Kay*, supra; *Silver v. Silver*, 421 Pa. 533, 219 A.2d 659 (1966). Yet, despite these well established rules, the majority here rejects the findings of facts and engages in speculation concerning the existence of a confidential relationship.

The master relied on an improper "trust" presumption and incorrectly assumed that a confidential relationship existed as a matter of law in reaching his conclusions. We cannot determine what influence, if any, these errors had on his findings of fact. The Court should vacate the decree and remand for a new hearing to determine whether there is a factual basis for establishing a constructive trust. I dissent from the Court's refusal to so direct.